2011 WY 109

**Anthony SMITH, Appellant (Plaintiff),**

v.

**LEWIS AUTO BODY, Appellee (Defendant).**

**No. S–10–0267.**

Supreme Court of Wyoming.

July 13, 2011.

Representing Appellant: Brian J. Hunter, William M. McKellar, and Julie Tiedeken, McKellar, Tiedeken and Scoggin, LLC, Cheyenne, Wyoming.

Representing Appellee: Mitchell E. Osborn, Cheyenne, Wyoming.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

BURKE, Justice.

[¶ 1] Appellant, Anthony Smith, appeals from an Order and Judgment awarding damages to Appellee, Lewis Auto Body, for costs incurred in connection with the repair and storage of his vehicle. Mr. Smith contends the district court erred in awarding damages for storage beyond the date that his insurer demanded release of the vehicle. We reverse.

## ISSUE

[¶ 2] Mr. Smith presents the following issue:

Was it proper for the district court to award damages to Lewis Auto Body for storage of the Corvette after the date that a demand was made for the return of the automobile?

## FACTS

[¶ 3] On August 27, 2006, Mr. Smith was involved in a single-car accident that caused extensive damage to his 2006 Chevrolet Corvette. The vehicle was subsequently taken to Lewis Auto Body for repairs. State Farm Mutual Automobile Insurance Company insured the vehicle and worked directly with Lewis on behalf of Mr. Smith during the months that followed. After providing an initial estimate for repairs, Lewis ordered replacement parts and began tearing down the vehicle. During that process, Lewis found additional damage that caused it to believe the car was a total loss. Lewis requested that State Farm inspect the vehicle. In the meantime, State Farm paid Lewis $6,500.00 for the parts that Lewis had ordered but had not installed. Between November, 2006, and February, 2007, a representative of State Farm went to Lewis's shop numerous times to inspect the vehicle for additional damage and to determine Lewis's willingness and ability to repair the car. Finally, on February 20, 2007, after conducting several inspections, State Farm determined that the car was a total loss.

[¶ 4] Forty-five days later, on April 6, 2007, State Farm requested that Lewis release the vehicle. In response, Lewis sent an invoice to State Farm requesting payment

for parts, labor, administrative tasks, and storage fees, which amounted to $30,816.32. State Farm responded with a letter to Lewis confirming its prior demand for release of the vehicle and contesting certain charges contained in the invoice. State Farm indicated its willingness to pay "reasonable storage fees for the insured vehicle" from the date it deemed the vehicle a total loss until the date it demanded release of the vehicle.

[¶ 5] Lewis did not release the vehicle after the demand was made. Two days after receiving the letter from State Farm, Lewis asserted a lien against the vehicle in the amount of $30,816.32. On the same day, Lewis attempted to foreclose the lien by sending notice to Mr. Smith and by publishing a notice of lien sale in the Wyoming Tribune–Eagle. On May 4, 2007, Lewis filed an affidavit with the County Clerk in an effort to obtain a certificate of title for the vehicle. Lewis also sent a letter to Mr. Smith demanding payment of the $30,816.32 and threatening to sell the vehicle at public auction if payment was not received. Lewis subsequently obtained title to the vehicle by way of a private sale.

[¶ 6] On June 15, 2007, Mr. Smith filed a Complaint for Replevin seeking to recover possession of the vehicle. Upon discovering that Lewis had conducted a lien sale and had obtained title to the car, Mr. Smith amended the Complaint to add a claim for conversion. On July 15, 2008, the district court granted summary judgment to Mr. Smith, finding that Lewis did not file a valid lien and did not provide proper notice of the sale. The court vacated the lien sale and voided Lewis's title. The following day, Lewis sent a notice to Mr. Smith stating that it had re-asserted its lien, this time in the amount of $36,816.32, and that it intended to sell the vehicle at public auction. On July 22, 2008, Lewis filed a Complaint for Money Judgment against Mr. Smith. In response, Mr. Smith filed an Emergency Petition to Prohibit the Sale or Other Disposition of the vehicle. The district court consolidated the actions.

[¶ 7] A bench trial was held in April, 2010. The district court awarded damages to Lewis in the amount of $20,516.00, which included $15,240.00 in storage fees calculated at $60.00 per day for 254 days. The district court determined that Lewis was entitled to storage fees during the period beginning February 20, 2007, when State Farm totaled the vehicle, and ending November 1, 2007, which was one week after State Farm posted a bond with the court to cover damages in the event that judgment was entered against Mr. Smith. The court held as follows:

> [S]ome time shortly after October 24th, 2007, [Lewis's] possession of the car should have come to an end because it was at that point both parties were engaged in a lawsuit. State Farm posted the [ ] bond which is designed to protect you to cover any judgment that might have been entered against [Mr. Smith].
>
> . . .
>
> So my conclusion is that November 1st, 2007, is appropriate to set for the date after which—I don't believe you're entitled to anything for storage—because it was at that date when you were protected. In the first place, you were already in court, and there are procedures set up to have a judicial resolution of your complaints. And you're protected because there's this $35,000 sitting there through the means of the [ ] bond.

Mr. Smith timely filed this appeal, challenging the district court's award of storage fees.

### STANDARD OF REVIEW

[¶ 8] In this case, we are presented solely with a question of law. We review the trial court's legal conclusions *de novo*. *Wilson v. Tyrrell*, 2011 WY 7, ¶ 33, 246 P.3d 265, 275 (Wyo.2011).

### DISCUSSION

[¶ 9] Mr. Smith suggests that the issue in this appeal is simply "whether one who retains property pursuant to a lien for storage can continue to accrue additional storage charges against the owner after a demand that the property be returned." The district court determined that Lewis was entitled to recover storage fees for Mr. Smith's vehicle beyond the date that State Farm demanded release of the vehicle. However, the court held that Lewis was not entitled to

storage fees charged after State Farm filed a bond with the court to cover its potential liability to Lewis. The court reasoned that, once the bond was filed, Lewis's interest in receiving payment for its services was protected, and, consequently, Lewis had no further need to retain possession of the vehicle.

[¶ 10] Mr. Smith contends the district court erred in determining that Lewis was entitled to storage fees after demand for the release of the vehicle was made. He argues that the storage charges incurred from April 6, 2007 through November 1, 2007 were improperly awarded. In response, Lewis contends that because the district court determined that its lien was invalid, "there was no real cutoff date in 2007 that could have stopped the storage being charged by Appellee Lewis." Lewis argues that the district court "could have awarded storage charges up to the date of trial in April 2010, had it found that it was reasonable to do so." For the reasons set forth below, we find that Lewis was not entitled to recover storage fees that were charged after State Farm demanded release of the vehicle.

[¶ 11] Lewis asserts that it had the right to retain possession of the vehicle and continue to charge storage fees until its invoice was paid. Assuming, for purposes of this appeal, that Lewis was entitled to a lien for services related to the repair of Mr. Smith's vehicle, we recognize that Wyo. Stat. Ann. § 29-7-102(a) grants a right of possession to a lienholder until payment for the lienholder's labor or services is tendered. Wyo. Stat. Ann. § 29-7-102(a) (LexisNexis 2009) provides that a "lien claimant may retain possession of the property to which the lien pertains until paid for the labor, services, materials and feed which entitle the lien claimant to assert the lien."[1] The governing provisions of the lien statutes, however, do not address whether a lienholder is also entitled to storage fees after a demand for release of the property has been made. This issue appears to be one of first impression for this Court.

[¶ 12] Mr. Smith cites to precedent from other states supporting his position. In *Country Mut. Ins. Co. v. Styck's Body Shop, Inc.*, 396 Ill.App.3d 241, 335 Ill.Dec. 382, 918 N.E.2d 1195 (Ill.App.Ct.2009), the Appellate Court of Illinois addressed the issue of whether a body shop was entitled to storage fees charged after the insurer demanded release of its insured vehicles. In that case, the insurer periodically hired the body shop to tow and store its insured vehicles following accidents in which those vehicles were damaged. *Id.* at 243, 335 Ill.Dec. 382, 918 N.E.2d 1195. The body shop began charging a $50.00 processing fee for each vehicle towed and stored. *Id.* The insurer offered to pay all of the accrued storage charges except for the $50 processing fees. *Id.* The shop, however, refused to honor the insurer's demand for possession of the vehicles until the processing fees were paid. *Id.* The insurer subsequently brought a replevin action seeking release of the vehicles. *Id.* at 244, 335 Ill.Dec. 382, 918 N.E.2d 1195. The trial court granted the insurer's motion for summary judgment, finding that the body shop was not entitled to storage charges after the insurer offered to pay the uncontested charges and demanded return of the vehicles. *Id.* at 244-45, 335 Ill.Dec. 382, 918 N.E.2d 1195.

[¶ 13] On appeal, the court upheld the trial court's decision and determined that the insurer's demand alone was sufficient to cut off additional storage fees. The court noted that Illinois Supreme Court precedent established that

> after the owner of property ... demands the return of that property from a bailee, the bailee is not allowed both (1) to continue to retain possession of the property pursuant to a lien on the property and (2) charge storage fees for holding the property for the period of time after the demand was made.

*Id.* at 247, 335 Ill.Dec. 382, 918 N.E.2d 1195 (citing *Weiland Tool & Manufacturing Co. v. Whitney*, 44 Ill.2d 105, 118, 251 N.E.2d 242, 249 (1969)). The court found that after the body shop refused the insurer's demand for possession of the vehicle, the body shop was

---

1. The statute also states that the right of possession "terminates six (6) months after the date upon which the charges become due and payable unless the lien claimant has commenced proceedings to foreclose the lien as provided by W.S. 29-7-101 through 29-7-106."

holding the property for its own benefit, rather than for the benefit of the insurer. *Country Mutual*, 396 Ill.App.3d at 248, 335 Ill.Dec. 382, 918 N.E.2d 1195. Further, the court rejected the body shop's argument that it had no choice but to retain possession of the vehicles, noting that the body shop could have released the vehicles and sued the insurer for the disputed charges. *Id.* at 249–50, 335 Ill.Dec. 382, 918 N.E.2d 1195. The court stated that "it was Body Shop's choice, after [the insurer] demanded possession of a vehicle ... not to return the vehicle and instead suffer the inconvenience of having part of its floor space occupied by insisting upon its right of retainer." *Id.* at 249, 335 Ill.Dec. 382, 918 N.E.2d 1195. Ultimately, the court held that payment of the disputed storage charges was not required in order to prevent subsequent storage fees from accumulating:

> [The insurer] did not need to make a proper legal tender in addition to a demand for possession to cut off additional storage fees.... [T]he demand for possession of a vehicle alone cut off Body Shop's right to continue charging storage fees for the days it retained that vehicle after [the insurer's] demand.

*Id.* at 248–49, 335 Ill.Dec. 382, 918 N.E.2d 1195.

[¶ 14] In another similar case, *GMAC v. D.C. Wrecker Service*, 220 W.Va. 425, 647 S.E.2d 861 (W.Va.2007), the Supreme Court of Appeals of West Virginia determined that storage fees charged by a towing company should not extend beyond the date that the vehicle owner attempted to obtain the release of his vehicle. The precise issue was whether the towing company held a valid lien for storage charges on a vehicle financed by General Motors Acceptance Corporation. In resolving this issue, the court was required to determine whether the storage fees were "reasonable" as required by West Virginia statute. *Id.* at 430–31, 647 S.E.2d 861. The facts in that case established that the towing company hauled the financed vehicle to its impound lot after the vehicle was involved in a collision. *Id.* at 428, 647 S.E.2d 861. The owner attempted to obtain a release of the vehicle within the first week of the accident

but was unable to contact the towing company. *Id.* Two weeks later, the vehicle-owner's aunt contacted the towing company and inquired about retrieving the vehicle. *Id.* The towing company informed her that the vehicle would not be released until $4,000.00–$5,000.00 in towing and storage fees were paid. *Id.* Neither GMAC nor the owner of the vehicle paid the amount demanded by the towing company, and the company refused to release the vehicle. *Id.* at 428–29, 647 S.E.2d 861. The court found that the storage fees were unreasonable and that the trial court erred in finding that the towing company had a valid lien. *Id.* at 431, 647 S.E.2d 861. The court held that

> [A]ssuming, *arguendo*, that [the owner] had consented to having [the towing company] tow and store [the owner's] vehicle, thereby creating a valid improver's lien for "reasonable" storage fees on [the towing company's] behalf, the trial court nonetheless erred when it found that the improver's lien extended beyond the date when [the owner] first sought to retrieve his vehicle.

*Id.*

[¶ 15] Finally, in *Owens v. Pyeatt*, 248 Cal.App.2d 840, 57 Cal.Rptr. 100 (Cal. App.4th Dist.1967), the California Court of Appeals also determined that a lienholder who retains possession of property pursuant to a lien is not entitled to storage fees. In that case, the plaintiffs were hired to repair a vehicle after it was involved in an accident. After the repairs were completed, the vehicle owners attempted to obtain possession of the vehicle. *Id.* at 843, 57 Cal.Rptr. 100. The plaintiffs, however, at the request of the owners' insurance company, refused to permit the owners to take possession unless they signed a release of claims under their insurance policy. The owners refused to execute the release and the plaintiffs retained possession of the vehicle. *Id.* The plaintiffs subsequently brought suit against the owner of the vehicle and the vehicle's insurer to recover the cost of repairs and storage charges. The jury rendered a verdict in favor of the plaintiffs. On appeal, judgment was reversed. The court determined that the vehicle owners should not have been required to execute

the release as a condition to obtaining possession of their vehicle. *Id.* at 845, 57 Cal. Rptr. 100. The court also noted that the plaintiffs had retained possession of the vehicle to protect their garagekeeper's lien and held that "A garageman who retains possession of an automobile repaired by him in the exercise of his right to claim a lien thereon is not entitled to the reasonable value of the storage thereof during the time he keeps it in his possession." *Id.* (citing Cal. Civ.Code § 2892; *Moss v. Odell,* 141 Cal. 335, 337, 74 P. 999 (Cal.1903)).

[¶ 16] The single case that Lewis cites as support for its position is distinguishable. In *Lake Charles Nissan, Inc. v. State Farm Mut. Auto. Ins. Co.,* 590 So.2d 614 (La.App. 3 Cir.1991), the insurer decided to "total out" a vehicle after it was sent to an automotive dealer for repairs. A dispute arose over how much of the repair work had been authorized before the vehicle was totaled. *Id.* at 615. The repairer filed suit against the insurer for the alleged cost of the repairs, as well as for storage fees in the amount of $4.00 per day until the sums owed to the repairer were paid in full. *Id.* The appellate court, in affirming the trial court's ruling in favor of the repairer, cited to a Louisiana statute which provided that "He who, having in his possession the property of another, whether in deposit or on loan or otherwise, has been obliged to incur any expense for its preservation, acquires on this property two species of rights." The court held that "an automobile repair shop is entitled to storage fees under this article as long as evidence is presented at trial which affords a basis to levy such charges and the storage time is reasonable." *Id.* There is no indication in the opinion that a demand for release of the vehicle was made and the court did not determine whether storage fees could be charged after a party requests that a vehicle be released from a repair shop. Perhaps more significantly, the Louisiana statute specifically authorized lien rights if the garageman incurred "any expense" for preservation of property in his possession. *Id.* Lewis has not identified any Wyoming statute providing similar protection.

[¶ 17] As in *Country Mutual,* we rely on the fact that once the demand is made, the lienholder no longer holds the subject property for the benefit of the property owner. Rather, the lienholder retains the property in order to collect a debt that it believes it is owed, a purpose directed entirely to its own benefit. *See id.,* 396 Ill.App.3d at 248, 335 Ill.Dec. 382, 918 N.E.2d 1195. The cost of storage should be borne by the lienholder who insists on the right of possession. Accordingly, we conclude that even if Lewis had timely asserted a valid lien in this case, Lewis was not entitled to storage fees after a demand for release of the vehicle was made because, during that period, Lewis was storing the vehicle for its own benefit.

[¶ 18] Lewis asserts that retaining possession of Mr. Smith's vehicle was its only practical course of action. It contends that, after the district court determined that the initial lien was invalid, it had no choice but to hold onto the vehicle in order to protect its interest in receiving payment for labor, parts, and other expenditures related to the vehicle. According to Lewis, "the only thing Appellee Lewis could do was continue to store the vehicle, attempt to perfect another lien and maintain an action for damages."

[¶ 19] As indicated above, the argument that a repair shop has "no choice" but to retain possession of a vehicle as security was rejected in *Country Mutual* because, as the court noted, the body shop could have released the vehicles in its possession and sued for damages. *Id.,* 396 Ill.App.3d at 249, 335 Ill.Dec. 382, 918 N.E.2d 1195. It was not necessary for Lewis to retain possession of the vehicle in order to file an action for damages. Lewis also was entitled to assert a lien regardless of whether it had possession of the vehicle. *See* Wyo. Stat. Ann. §§ 29–7–101 through 29–7–106. Under Wyo. Stat. Ann. § 29–7–102(a), Lewis would have been entitled to retain possession pursuant to a valid lien until it received payment for its services. We hold, however, that Lewis was not also entitled to accumulate storage charges during this period.

[¶ 20] Reversed and remanded for entry of an order consistent with this opinion.